1    AUER LAW FIRM PLLC
     Colleen Auer (014637)
2    11445 E. Via Linda, STE 2-529
     Scottsdale, Arizona 85259
3    Telephone: (602) 370-7965
     cauernd14@gmail.com
4

5    *Attorney for Plaintiffs*

6

7           **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE DISTRICT OF ARIZONA**
8
                                          No.
9    Emily Thoms and Kamaleilani Moreno,

10               Plaintiffs,

11

12       v.                               **VERIFIED COMPLAINT FOR**
                                          **DECLARATORY AND INJUNCTIVE**
13                                        **RELIEF**

14   Maricopa County Community College
     District,
15
16               Defendant.

17

18

19          Plaintiffs herein complain against Defendant, Maricopa County Community College

20   District (the "District") as follows:

21                              **NATURE OF ACTION**

22          1.   This is a civil action arising under the First Amendment and Arizona's Free

23   Exercise of Religion Act ("AZFERA"), A.R.S. §§41.1493 *et seq.*

24          2.   Plaintiffs seek injunctive and declaratory relief from the District's administrative

25   regulation, promulgated on or about August 25, 2021, and amended on or about September

26   16, 2021, which requires all District Nursing and Allied Health students (the "N&AH

27   Students") assigned to a Fall 2021 clinical rotation with a clinical partner who requires

28

1    universal COVID-19 vaccination for clinical placements, to forfeit their sincere religious

2    beliefs and get vaccinated before the start of said rotation or exercise their sincere religious

3    beliefs opposing vaccination and be removed from their academic programs at the start of

4    said rotation (the "Vaccine Mandate").

5        3.  Plaintiffs have moved this Court for temporary and preliminary injunctive relief

6    in view of the following:

7        a.  Efforts by Plaintiffs' counsel to secure a reasonable accommodation for

8    Plaintiffs from the District ended unsuccessfully on October 14, 2021; and,

9        b.  Plaintiffs are subject to the Vaccine Mandate for their Fall 2021 clinical

10   rotations commencing on November 8, 2021, and absent the injunctive relief requested,

11   will suffer irreparable harm for exercising their sincere religious beliefs opposing COVID-

12   19 vaccination, as follows:

13       ► the District will withhold further contracted-for educational services from

14   Plaintiffs commencing on November 8, 2021;

15       ►the District will remove Plaintiffs from their nursing programs resulting in

16   a failure (or an incomplete) for their fourth and final semester of those programs; and,

17       ►the District will deny Plaintiffs the balance of their contracted-for

18   educational services and the resultant Associate in Applied Science in Nursing Degrees

19   anticipated December 17, 2021.

20   **JURISDICTION AND VENUE**

21       4.   This action arises under the First Amendment to the United States

22   Constitution and is brought pursuant to 42 U.S.C. §1983.

23       5.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331

24   and 1343(a)(3)(4). Further, this Court has pendent jurisdiction over the state-counterpart

25   claim pled pursuant to 28 U.S.C. §1367(a). Venue in this judicial district is proper pursuant

26   to 28 U.S.C. §1391(b) because: (i) Defendant resides in this judicial district, and (ii) all of

27

28

the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

6. This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

7. This Court is authorized to grant Plaintiffs' prayer for temporary, preliminary, and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

8. This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. §1988 and A.R.S. §41-1493.01(D).

## **PARTIES**

## I. PLAINTIFFS

9. As more particularly alleged below, Plaintiffs are students in the District's nursing program at Mesa Community College ("MCC") whose sincere religious beliefs compel them to refuse vaccination with the available COVID-19 vaccines, all of which employ aborted fetus cell lines in their testing, development, or production.

10. Plaintiff Emily Thoms resides in Prescott, Arizona. Plaintiff Kamaleilani Moreno resides in Chandler, Arizona.

## II. DEFENDANT

11. The District is a political subdivision of the State of Arizona, organized and existing under the laws of the state of Arizona, governed by the Maricopa County Community College District Governing Board (the "District Board"), with the capacity to sue and be sued. A.R.S. §15-1444B(3).

12. The District, by and through its District Board, manages and operates ten community colleges and two skill centers in Maricopa County, Arizona from its headquarters in Tempe, Arizona.

3

13.     The District Board has broad general powers and duties in regard to the governance and operation of the community colleges under its jurisdiction (A.R.S. §§15-1401, -1444, -1445), and is authorized and required: 1) to "adopt policies for the government of th[ose] community colleges" (A.R.S. §15-1445(1)); and, 2) to "enforce the courses of study prescribed by the [D]istrict [B]oard" (A.R.S. §§15-1444(A)(3)).

14.     All of the District Board's actions on behalf of the District, as alleged herein, were taken in its official capacity, within the scope of its authority, and under color of state law.

## FACTS COMMON TO ALL CLAIMS

## I.  DISTRICT'S VACCINE MANDATE OVERVIEW AND IMPLEMENTATION

### A.     District's Vaccine Mandate

15.     The District attributes its Vaccine Mandate to the requirements of its thirty-six (36) major healthcare providers and their affiliates who partner with it to provide clinical opportunities for the District's N&AH Students (the "Clinical Partners").  Under its agreements with these Clinical Partners, the District promises to adhere to their clinical-placement requirements, including their respective health and safety requirements for students related to COVID-19.  These requirements vary significantly among the Clinical Partners, as follows:

a.  *Some* Clinical Partners require universal COVID-19 vaccination for students who perform clinical work at their facilities.  Plaintiffs are informed by the District that this includes: Phoenix Children's Hospital and Mayo Clinical Hospitals.

b.  *Some* Clinical Partners *allow the declination* of COVID-19 vaccination for students who perform clinical work at their facilities.  Plaintiffs are informed by the District that this includes: Abrazo Health, Valleywise Health, and Mountain Vista Medical Center.  These Clinical Partners require unvaccinated students to sign a declination document, and

1    to comply with the Clinical Partners' daily self-screening, universal masking, heightened

2    sanitization, and other COVID-19 safety protocols.

3          c. *Some* Clinical Partners *permit religious and other exemptions to* COVID-19

4    vaccination for students who perform clinical work at their facilities. Plaintiffs are

5    informed by the District that this includes: Banner Health and HonorHealth. These Clinical

6    Partners require students with approved exemptions to comply with the Clinical Partners'

7    daily self-screening, universal masking, heightened sanitization, and other COVID-19

8    safety protocols.

9          d. *Some* Clinical Partners *leave it to the District* to determine the COVID-19

10    vaccination requirements for its students who perform clinical work at their facilities.

11    Plaintiffs are informed by the District that this includes: Dignity Health.

12          e. Finally, *some* Clinical Partners *have not taken and/or communicated a position*

13    on COVID-19 vaccination requirements for students who perform clinical work at their

14    facilities. Plaintiffs are informed by the District that this includes: Phoenix VA Healthcare

15    System.

16          **1.    Phase 1: No Accommodation for Sincere Religious Beliefs**

17       16.    In the face of this wide variation in its Clinical Partners' COVID-19

18    vaccination requirements for students, the District elected to adopt the Vaccine Mandate

19    which requires all N&AH Students to meet the clinical placement requirements of the

20    District's most stringent Clinical Partner. Those requirements are: universal COVID-19

21    vaccination for students placed with that Clinical Partner by October 1, 2021.

22        17.    According to the District, this unyielding vaccination requirement is

23    necessary for all of its N&AH Students because clinical placements are randomly assigned

24    based on available clinical spots for each college and thus any N&AH Student could be

25    assigned to the District's most stringent Clinical Partner. The Vaccine Mandate therefore

26    ensures that N&AH students invariably satisfy the placement requirements of assigned

27

28

1  Clinical Partners, which, in turn, ensures that the District satisfies its contractual
2  commitments to its Clinical Partners to abide by their placement requirements.

3      18.  But, in truth, the District's clinical assignment process is quite different.
4  Indeed, it is not done by random assignment.  Rather, N&AH Students are allowed to pick
5  their top three (3) clinical-site preferences, and the District makes assignments to
6  accommodate those listed preferences.  Thus, the District can, and does, suit clinical
7  assignments to its N&AH students' preferences.

8      19.  Still, the District imposed the Vaccine Mandate and set a deadline for
9  compliance of September 30, 2021 ("Compliance Deadline").

10      20.  By that Compliance Deadline, all N&AH Students, including Plaintiffs, had
11  to either:

12      a.  provide proof of COVID-19 vaccination to the District and to their assigned
13  Clinical Partner(s) for Fall 2021 clinicals by uploading their vaccination documentation
14  into American DataBank ("ADB") and/or My Clinical Exchange ("mCE"); or

15      b.  seek a "religious accommodation" from the District by (i) completing and
16  uploading the District's COVID-19 Vaccine Declination form and Religious
17  Accommodation Request form into ADB and/or mCE, and (ii) copying their Program
18  Director on these materials.

19      21.  The requests for religious accommodation, however, would invariably be
20  denied by the District on the grounds that:

21      …there is no reasonable accommodation that would enable you to meet the
22      requirements for clinical placement without placing an undue hardship upon
    the College/District in complying with its agreements with [C]linical
23      [P]artners and in making its student-placement assignments.

24  [*See* Office of Compliance emails rejecting Plaintiffs' religious accommodation requests
25  dated September 15, 2021, attached hereto as Exhibit 1.]

26

27

28

**2.    Phase 2: Selective Accommodation of Sincere Religious Beliefs**

22.    Two weeks before the Compliance Deadline was set to expire, the District amended its Vaccine Mandate on September 16, 2021 to allow select N&AH Students opposed to COVID-19 vaccination on religious grounds to obtain an accommodation from the District (the "REL/Eligibles").

23.    The accommodation is an extension of the N&AH Student's Compliance Deadline for the Vaccine Mandate from September 30, 2021 through the conclusion of the N&AH Student's Fall 2021 clinical rotations (the "Accommodation").

24.    To qualify for the Accommodation, the N&AH Student has to meet all of the following requirements:

(i)    he/she has to be assigned to Fall 2021 rotations with Clinical Partners who either do not require COVID-19 vaccination, or offer religious exemptions to COVID-19 vaccination, for clinical placements;

(ii)    he/she must have requested a "religious accommodation" from the District by the Compliance Deadline, as alleged in paragraph 20b above;

(iii)    he/she must complete and upload the District's Religious Accommodation Agreement (with approved declination forms or religious exemptions from Clinical Partners) into ADB and/or mCE, and copy their Program Director on these materials prior to the start of the associated Fall 2021 clinical rotations.

[The District's standard Religious Accommodation Agreement is attached hereto as Exhibit 2, and the revised version of that Agreement authorized for Plaintiffs' use only is attached hereto as Exhibit 3.]

25.    Since N&AH Students have two Fall 2021 clinical rotations with different Clinical Partners, both Clinical Partners have to exempt the student from COVID-19 vaccination requirements in order for the student to receive the Accommodation from the District. Even then, the Accommodation is contingent upon the Clinical Partners' (i) not changing their placement criterion to require universal COVID-19 vaccination for students,

1    and/or (ii) canceling the clinical placement necessitating reassignment to another Clinical

2    Partner that might require universal COVID-19 vaccination for students.  [*See* Ex. 2 at 2

3    ¶¶1-2.]

4        26.    Plaintiffs are not REL/Eligibles, because they are assigned to at least one Fall

5    2021 rotation with a Clinical Partner who requires universal COVID-19 vaccination for

6    students.

7    **B.    District's Mandate Decision**

8        **1.    A Non-Transparent Mandate**

9        27.    The Vaccine Mandate is a policy which the District Board is expressly

10   authorized to adopt "for the government of the community colleges under its jurisdiction."

11   [A.R.S. §15-1445(1).]

12       28.    In this instance, the August 25, 2021 Vaccine Mandate, as amended on

13   September 16, 2021, was formulated behind closed doors by an unknown contingent of the

14   District's academic leadership with the knowledge, authorization, and consent of the

15   District Board, and the District Board expressly adopted and/or ratified the Vaccine

16   Mandate without any public discussion or vetting of the grounds for the Vaccine Mandate.

17       29.    As a result, there is no way to know what information the District Board

18   relied on to decide that it would be infeasible for the District to provide *any* form of

19   accommodation to N&AH Students, like Plaintiffs, who do not qualify as REL/Eligibles

20   but, nevertheless, require the same religious accommodation from COVID-19 vaccination

21   in order to complete their Fall 2021 clinical rotations and continue on to finish out their

22   academic programs (the "REL/InEligibles").

23       30.    What is known, however, is that the District Board rejected multiple

24   accommodations proposed by the REL/InEligibles as unreasonable on the grounds of

25   undue hardship to the District.  This includes, but is not limited to, the following

26   accommodations:

27

28

8

a. *Simulation of Clinical Experiences*. While the Governor's Declaration of Emergency associated with the COVID-19 pandemic remains in effect, the District has the ability to obtain from the Arizona State Board of Nursing ("AZBON") a temporary and renewable one-year waiver of specific teaching requirements for its AZBON-approved nursing, nursing assistant, and medication assistant programs, as follows:

> The requirements that may be waived include: *a.) to substitute simulations, lab hours, and similar non-direct patient contact for required direct patient care clinical/instruction hours;* b) to provide all classroom/didactic teaching electronically, rather than in-person.

[*See* AZBON Declaration: Temporary Waiver of Applicable Professional Licensure Requirements (Emergency Measures for COVID-19) at ¶8 (emphasis supplied), attached hereto as Exhibit 4.]

To obtain the AZBON Temporary Waiver, the applicant must "describe all requested program modifications, and how the modification will provide adequate learning opportunities." [*Id.*] The District applied for and obtained this temporary waiver from the AZBON for the period March 19, 2020 to March 19, 2021, and for a renewal period from August 12, 2021 to August 20, 2022. [*See* AZBON Response to Public Records Request dated October 5, 2021 with attached District applications for the original and renewal waivers, attached hereto as Exhibit 5.]

Thus, the District has a reasonable means available to it to accommodate the REL/InEligibles – namely, simulation of clinical experiences in lieu of on-site clinical work. Indeed, the District has already relied on this form of accommodation to provide the same training at issue to its N&AH Students who graduated in December 2020 and May/June 2021 during the height of the pandemic when there were few, if any, clinical placements available.

b. *Hybrid Combination of Simulation and In-Person Clinical Experiences*. Alternatively, the District has the ability to employ a hybrid combination of simulation of clinical experiences with in-person clinical experiences at other facilities without universal

1   COVID-19 vaccination requirements such as fire departments or physicians' offices, as an

2   accommodation to REL/InEligibles.

3       c.  *Extra Assignments and/or Simulation Days*.  The District also has the option to

4   substitute extra assignments and/or simulation days for in-person clinical work as an

5   accommodation to REL/InEligibles.  This might include *Lippincott DocuCare* which

6   "integrates over 150 patient scenarios with web-based academic Electronic Health Record

7   (EHR) simulation software, allowing students to learn how to use an EHR in a safe, true-

8   to-life setting, while enabling instructors to measure their progress."  *See*

9   https://laerdal.com/us/products/courses-learning/virtual-simulation/lippincott-docucare/.

10  It might also include *vSim for Nursing*, which is "designed to simulate real nursing

11  scenarios" and "allows students to interact with patients in a safe, realistic environment,

12  available anytime, anywhere."  *See* https://thepoint.lww.com/book/show/592700#/about-

13  this-product?groupby=.  And, it might also include in-person clinical experiences as well.

14      d.  *Switching Clinical Partner Assignments*.  Another option available to the District

15  is to allow REL/InEligibles to switch Fall 2021 rotations with COVID-19-vaccinated

16  N&AH Students placed with Clinical Partners that do not require, or permit exemptions to,

17  COVID-19 vaccination.

18      e.  *Ask Clinical Partners Mandating the Vaccine to Permit Religious Exemptions*.

19  Still another option available to the District is to negotiate with its Clinical Partners who

20  require universal vaccination in order to secure a religious exemption contingent upon the

21  student's strict adherence to certain safety protocols, which may include: pre-clinical

22  COVID-19 testing; daily COVID-19 pre-checks, use of N95 masks and other protective

23  gear while working on premises, restricting work to certain approved areas, and the like.

24      31.  According to the District Board, not one of the above-alleged

25  accommodations can reasonably be provided to REL/InEligibles without substantially

26  compromising the academic integrity and/or administration of its educational programs.

27

28

10

32.     Yet, history reflects that when the District wants to, or for self-serving reasons must, accommodate its students' particular needs, it does so.  By way of example only, and not limitation:

a.  the District provided simulation of the same clinical experiences at issue (in lieu of in-person clinicals) for its N&AH Students who graduated in December 2020 and May/June 2021 during the height of the COVID-19 pandemic when few, if any, clinical placements were available;

b.  the District substituted simulation of clinical experiences for in-person clinical days for a group of students who failed to timely meet non-vaccination, clinical placement criteria; and,

c.  the District deferred the deadline for three (3) student blocks to meet non-vaccination, clinical placement criteria.

[*See, e.g.*, August 31, 2021 Announcement for Paradise Valley Community College ("PVCC") Clinical Group 2 ("Please note that Clinical Group 2 did not meet the compliancy expectation by the hospital's deadline, so the first day of clinical at the hospital has been cancelled.  Professor Tracy will be looking at the schedule to determine a SIM date, hopefully the same date as planned");  October 6, 2021 Jared Christy Email to nursing students in Blocks 1-3 (extending deadline to comply with non-vaccination clinical placement criteria).  The August 31, 2021 Announcement and October 6, 2021 email are attached hereto as Exhibits 6 and 7, respectively.]

33.     These are merely three (3) examples of the multitude of historical accommodations the District has made for its N&AH Students over the years when the District was so inclined.

### 2.     A Selectively-Applied Mandate

34.     The District's Vaccine Mandate is selective in its impact – falling entirely on the shoulders of REL/InEligibles.

11

35.     They alone are given a Hobson's Choice by the District to: 1) abandon their religious convictions and get vaccinated before the commencement of their Fall 2021 rotations with universal vaccination requirements *or* 2) be pulled from those clinical rotations, resulting in a failure (or an incomplete) for the semester and withdrawal from their academic programs.  [*See* Ex. 2 at 2, ¶5; *see also* District Administrator's letter to each Plaintiff denying their respective religious accommodation requests dated September 14, 2021, attached hereto as Exhibit 8.]

### 3.     Not the Least Restrictive Alternative

36.     The dire consequences visited on the REL/InEligibles for standing by their religious convictions and refusing COVID-19 vaccination are attributable to the District's singular interest in remaining compliant with its Clinical Partner contracts.

37.     This is not about public health and safety.  Indeed, the District has no COVID-19 vaccine requirement for its own students, including the N&AH Students.  Nor did the District have any hand in crafting the public health and safety protections required of its students by its Clinical Partners, which it left entirely to its Clinical Partners.

38.     Rather, the District's sole interest is to ensure that its N&AH students meet the clinical placements requirements of its Clinical Partners, as covenanted by the District, whatever they might be.

39.     The one-size-fits all Vaccine Mandate for N&AH Students is therefore a matter of expedience and ease of administration for the District; it is not a carefully-crafted policy designed to satisfy the District's contractual commitments to *both* its Clinical Partners and N&AH Students, while also respecting and accommodating the sincere religious beliefs of its N&AH Students.

40.     This is evidenced by the following facts:

a.     as of the date of this filing, the District *does not know* the student vaccination requirements of twenty-eight (28) of its thirty-six (36) major Clinical Partners, much less their affiliates, and is therefore in no position to conclude that there is *no* reasonable

1  academic accommodation it can offer REL/InEligibles without undue hardship to the
2  District;

3      b.      with the District's blessing, REL/InEligibles *have already been performing*
4  *both virtual clinicals and in-person clinicals* for Fall 2021 (i.e., the hybrid accommodation
5  model alleged in paragraph 30(b) above) with various of the District's Clinical Partners
6  whose COVID-19 vaccination requirements for employees and students do not go into
7  effect until November 1, 2021; and,

8      c.      the District's Compliance Deadline for the Vaccine Mandate has proven
9  meaningless for REL/Eligibles still awaiting religious exemption approvals from their
10 assigned Clinical Partners after September 30, 2021, with the District deferring that
11 deadline until after those approvals are received unless, of course, they are not received by
12 the commencement date of the clinical rotation in which case the affected REL/Eligibles
13 suffer the same punitive program consequences as the REL/InEligibles because of the
14 Clinical Partners' tardiness in approving their religious exemption requests.

15     41.     It is also evident that the District's contractual covenants with its N&AH
16 Students do not factor in to its Vaccine Mandate.  The District promised these students
17 education, training, and a degree/certificate in their field of study if they met the terms and
18 conditions of enrollment, made satisfactory academic progress, and paid the costs of their
19 academic programs, all of which they have done.  Submitting to COVID-19 vaccination
20 was never part of that bargain.  Nor was abandoning their sincere religious beliefs.  Yet,
21 those covenants have been entirely overlooked by the District in the formulation and
22 enforcement of its Vaccine Mandate.

23     42.     Indeed, the District has shunned at least five (5) alternative accommodations,
24 alleged hereinabove, that would enable it to fulfill both its contractual commitments to its
25 Clinical Partners and to its REL/InEligibles, while also permitting the latters' free exercise
26 of their sincerely held religious beliefs.

27
28

## II. DISTRICT'S BULLYING AND VILIFICATION OF STUDENTS SEEKING A RELIGIOUS ACCOMMODATION FROM THE VACCINE MANDATE.

43.     The District has made no secret of its disdain for the religious beliefs of its N&AH Students who have refused COVID-19 vaccination on those grounds, as evidenced by the following:

▶ the speed with which the District imposed the Vaccine Mandate before it knew its Clinical Partners' positions on COVID-19 vaccination for students placed at their facilities;

▶ the lectures, counseling, and disparate treatment religious objectors have endured while being made to feel selfish, ostracized, and "less than" worthy healthcare professionals for not sacrificing their religious convictions to get vaccinated;

▶ the misinformation (*e.g.* below) and discouragement religious objectors have been fed in order to make them believe that religious exemptions to COVID-19 vaccination are an impossibility – creating anxiety, self-doubt, internal conflicts, and incredible stress to sacrifice their sincere religious beliefs in order to salvage their educational futures;

> [The District] will take [your declination] because we are not going to have students all up in arms over this.  Here's the thing, if it was for [the District], you guys would be fine.  We're not saying you can't go to class.  We're not saying you can't go to SIM.  We're not saying you can't go to lab, okay.  Just like every student here, any math student doesn't have to fill something out, so why would you.  Our Clinical Partners are a whole other bag, okay, they're not messing around.  What they're gonna [sic] do, Banner and Valleywise has it as well [i.e., mandatory vaccination], which means other hospitals are going to follow in line because that's what they do right.  They will say that you can turn your declinations into them, they will go to their own panel, and say yes or no.  If they say no, we cannot do anything about this.
>
> . . .
>
> The fact that Banner and these places are doing these declinations, you all know why they're doing them, legally.  Their employees are quitting or being fired, if they had a real declination process, those people would still be there wouldn't they.  Okay, so what are your chances?

14

[August 23, 2021 Recording (comments made by Clinical Coordinator, Jared Christy, to District nursing students seeking information about religious exemptions to COVID-19 vaccination requirements for clinical placements).]

▶ the outright bullying of religious objectors who were denounced and targeted by one of their own Clinical Coordinators in his social media postings made while he was tasked with assisting these students with updates and information about COVID-19 vaccination for their clinical placements, as follows:

> ▪ So we're back to masks even for fully vaccinated.  Thank you, you selfish dicks.  You know who you are.  And no, I will not listen to you and your bullshit.  (Jared Christy, Facebook Posting, July 29, 2021.)

> ▪ Look if I get drunk and decide to drive around and inadvertently kill you.  I mean am I at fault?  That is COVID vaccine denial.  (Jared Christy, Facebook Posting, August 2, 2021.)

> ▪ So maybe you should just get the shot, worse comes to worse you die and won't have to pretend you're so great all the time.  (Jared Christy, Facebook Posting, August 12, 2021.)

When advised of these vicious postings and their adverse impact on Plaintiffs and other students seeking religious exemptions to the Vaccine Mandate, the District's response, ironically, was to defend this Clinical Coordinator's First Amendment right to "emote" on the topic, so long as he does not claim to be speaking for the District.

44.    Meanwhile, the religious objectors seeking exemptions from COVID-19 vaccination had to fight, push, prod, and provoke their Program Directors, Clinical Coordinators, and so many others, both inside and outside of the District, to simply obtain the opportunity to seek a religious exemption from the Vaccine Mandate.

45.    Ultimately, the REL/Eligibles were fortunate to be assigned to rotations with Clinical Partners that honored their requests for religious exemptions from vaccination.

46.    Plaintiffs and the other REL/InEligibles, however, were not so fortunate. And, every form of academic accommodation they have proposed to the District has been

15

rejected as an undue hardship, accompanied by a written reminder from the District that completion of their academic programs is on the line if they do not provide proof of an approved exemption or vaccination by the start of their Fall 2021 rotations with a Clinical Partner requiring universal COVID-19 vaccination.

47.     The pressure the District has placed on these REL/InEligibles to forfeit their religious convictions or their academic programs is unreal and unprecedented and more than some of them could withstand, as the District fully expected.

48.     For Plaintiffs and the other REL/Ineligibles that remain unvaccinated because of their religious convictions, they have figuratively walked through fire and wait just beyond the flames to see if everything they have worked for will go up in smoke because they refuse to sacrifice their sincerely held religious beliefs to mollify an uncompromising District.

**III.     PLAINTIFFS' SHARED RELIGIOUS CONVICTIONS OPPOSING COMPULSORY COVID-19 VACCINATION.**

49.     Plaintiffs are united in their conscientious religious objections as Christians to being inoculated with any of the available COVID-19 vaccines because they all employ fetal cell lines derived from procured abortion in testing, development or production of the vaccines.  In particular:

    a.  Johnson & Johnson/Janssen: Fetal cell cultures are used to produce and manufacture the J&J COVID-19 vaccine and the final formulation of this vaccine includes residual amounts of the fetal host cell proteins ($\leq 0.15$ mcg) and/or host cell DNA ($\leq 3$ ng).

    b.  Pfizer/BioNTech: The HEK-293 abortion-related cell line was used in research related to the development of the Pfizer COVID-19 vaccine.

    c.  Moderna/NIAID: Aborted fetal cell lines were used in both the development and testing of Moderna's COVID-19 vaccine.

50.     Plaintiffs share the following sincere religious beliefs concerning these abortion-connected vaccines:

a.  They oppose abortion and believe it is the sinful killing of innocents and strictly prohibited by their Christian faith, as is the use of abortion-derived fetal cell lines for medical or research purposes.

b.  It would be an unthinkable and complicit act in abortion and a violation of their deeply held religious beliefs and moral consciences to take any of the COVID-19 vaccines, given their use of fetal cell lines in testing, development, or production.

c.  The vaccine's composition, side effects, fading efficacy over time, and the body's own natural immunity also inform Plaintiffs' religious convictions against involuntary or coerced vaccination as an invasion of the sanctity of the body and bodily autonomy contrary to their religious beliefs.

**A.    Plaintiff Emily Thoms**

51.    Plaintiff, Emily Thoms, is a senior in good standing, in her fourth and final semester of MCC's nursing program.

52.    On August 26, 2021, Emily was informed of the Vaccine Mandate via email from the District Administrator, MaricopaNursing ("District Administrator").  The email described the process students must follow to request a religious accommodation from the Vaccine Mandate.

53.    On September 10, 2021, Emily followed that process and completed and uploaded the District's COVID-19 Vaccine Declination form and Religious Accommodation Request form, copying her Program Director on those materials.  In addition, Emily sent the District Administrator and the Program Chair, MCC Nursing ("Program Chair"), an email with an attached vaccination declination letter to be sent to her assigned clinical sites, in which Emily detailed the bases for her request for a religious accommodation from the Vaccine Mandate.

54.    On September 14, 2021, Emily received a response to her religious accommodation request from the District Administrator stating that the request had been

17

reviewed by the District Administrator and Program Chair and was denied on the grounds that:

> [W]e cannot remove a requirement for placement at a clinical site as this would constitute an undue hardship upon the College/District…Clinical placements are negotiated through healthcare partners and students have always been required to meet all required health and safety requirements related to clinical placement, as outlined by our most stringent clinical partner. The college cannot change its requirements for program completion, exempt students from, or remove academic or clinical components that are part of its approved and accredited program of study as this would constitute an undue hardship upon the College/District.

[Ex. 8.] Emily was presented with the following options:

> 1. Exception to the Withdrawal policy. If you choose to withdraw from your classes that have a clinical component, you may submit this determination letter and you will be granted an exception to the refund policy. (*Note: this is a refund of this current semester only, and not the entire cost of the program*)
>
> 2. Possible Readmission 2022. You may work with your faculty member(s) to complete the exit interview form. During this interview, you can indicate if you wish to be considered for placement in the subsequent two semesters (not counting summer). Placement is dependent on space available and the clinical requirement for the COVID-19 vaccine may still be in place for our clinical facilities.

[*Id.* at 2, ¶¶1-2 (parenthetical note added).] Finally, Emily was advised that the decision to deny her request for a religious accommodation from the Vaccine Mandate would be reviewed by the District's Compliance Office. [*Id.* at 2.]

55.     On September 15, 2021, Emily received an email from an attorney in the District's Compliance Office regarding the adverse determination on her request for a religious accommodation from the Vaccine Mandate. [Ex. 1.] The attorney affirmed the adverse determination, stating as follows:

> After careful consideration, I have decided that there is no reasonable accommodation that would enable you to meet the requirements for clinical placement without placing an undue hardship upon the College/District in complying with its agreements with clinical partners and in making its

18

student-placement assignments. I have therefore decided to affirm the denial
of your religious accommodation request.

[*Id.*]

56.     One of Emily's assigned clinical sites for Fall 2021 requires universal
COVID-19 vaccination for students working in its facilities.   The District has refused
Emily's repeated written requests for an academic accommodation that would allow her to
complete this 3-day clinical rotation without submitting to a vaccine she opposes on
religious grounds.

57.     Prior to the Vaccine Mandate, Emily was slated to graduate from MCC with
an Associate in Applied Science in Nursing Degree on December 17, 2021.  Now, pursuant
to the Vaccine Mandate, Emily will be removed from the MCC nursing program before
her final, assigned clinical rotation commences on November 8, 2021 unless she abandons
her sincere religious beliefs and provides proof of COVID-19 vaccination to the District
by that date.

**B.     Plaintiff Kamaleilani Moreno**

58.     Plaintiff, Kamaleilani Moreno ("Kami"), is a senior in good standing, in her
fourth and final semester of MCC's nursing program.

59.     On August 26, 2021, Kami was informed of the Vaccine Mandate via email
from the District Administrator.  The email described the process students must follow to
request a religious accommodation from the Vaccine Mandate.

60.     On September 10, 2021, Kami followed that process and completed and
uploaded the District's COVID-19 Vaccine Declination form and Religious
Accommodation Request form, copying her Program Director on those materials.   In
addition, Kami sent the District Administrator and Program Chair an email with an attached
vaccination declination letter to be sent to her assigned clinical sites, in which Kami
detailed the bases for her request for a religious accommodation from the Vaccine
Mandate.

61.     On September 14, 2021, Kami received a response to her religious accommodation request from the District Administrator stating that the request had been reviewed by the District Administrator and Program Chair and was denied on the grounds that:

> [W]e cannot remove a requirement for placement at a clinical site as this would constitute an undue hardship upon the College/District...Clinical placements are negotiated through healthcare partners and students have always been required to meet all required health and safety requirements related to clinical placement, as outlined by our most stringent clinical partner. The college cannot change its requirements for program completion, exempt students from, or remove academic or clinical components that are part of its approved and accredited program of study as this would constitute an undue hardship upon the College/District.

[Ex. 8.] Kami was presented with the following options:

> 1.  Exception to the Withdrawal policy. If you choose to withdraw from your classes that have a clinical component, you may submit this determination letter and you will be granted an exception to the refund policy. (*Note: this is a refund of this current semester only, and not the entire cost of the program*)
>
> 2.  Possible Readmission 2022. You may work with your faculty member(s) to complete the exit interview form. During this interview, you can indicate if you wish to be considered for placement in the subsequent two semesters (not counting summer). Placement is dependent on space available and the clinical requirement for the COVID-19 vaccine may still be in place for our clinical facilities.

[*Id.* at 2, ¶¶1-2 (parenthetical note added).] Finally, Kami was advised that the decision to deny her request for a religious accommodation from the Vaccine Mandate would be reviewed by the District's Compliance Office. [*Id.* at 2.]

62.     On September 15, 2021, Kami received an email from an attorney in the District's Compliance Office regarding the adverse determination on her request for a religious accommodation from the Vaccine Mandate. [Ex. 1.] The attorney affirmed the adverse determination, stating as follows:

After careful consideration, I have decided that there is no reasonable accommodation that would enable you to meet the requirements for clinical placement without placing an undue hardship upon the College/District in complying with its agreements with clinical partners and in making its student-placement assignments. I have therefore decided to affirm the denial of your religious accommodation request.

[*Id.*]

63.     One of Kami's assigned clinical sites for Fall 2021 requires universal COVID-19 vaccination for students working in its facilities.  The District has refused Kami's repeated written requests for an academic accommodation that would allow her to complete this 3-day clinical rotation without submitting to a vaccine she opposes on religious grounds.

64.     Prior to the Vaccine Mandate, Kami was slated to graduate from MCC with an Associate in Applied Science in Nursing Degree on December 17, 2021. Now, however, Kami will be removed from the MCC nursing program before her final, assigned clinical rotation commences on November 8, 2021 unless she abandons her sincere religious beliefs and provides proof of COVID-19 vaccination to the District by that date.

## CLAIMS

## COUNT 1
### VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. §1983)

65.     Plaintiffs reallege and incorporate the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

66.     The Free Exercise Clause of the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment, prohibits a political subdivision of the State from abridging the Plaintiffs' rights to free exercise of religion.

67.     Plaintiffs' right to practice their Christian religion is a fundamental right.

68.     Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination with abortion-connected vaccines, which includes available COVID-19 vaccines. Plaintiffs reallege the discussion of their sincerely held religious beliefs set forth in the preceding paragraphs.

69.     The Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

70.     The Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face removal from their academic programs.

71.     The Vaccine Mandate is not narrowly tailored and/or the least restrictive alternative to further the District's interest in remaining compliant with its Clinical Partner contracts, which could be achieved by providing Plaintiffs with any one of the academic accommodations alleged in paragraph 30 (a-e) above, among other accommodations.

72.     The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause, irreparable harm to Plaintiffs from the violation of their sincerely held religious beliefs and the punitive academic consequences exacted upon them for exercising those religious beliefs, which include removal from their Fall 2021 clinical rotations beginning November 8, 2021, resulting in a failure (or an incomplete) for the semester and withdrawal from their academic programs.

73.     Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional right to the free exercise of their sincerely held religious beliefs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

A.     A temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the District, its officers, agents, employees,

1    attorneys and successors in office, and all other persons in active concert or participation

2    with them, from enforcing, threatening to enforce, or attempting to enforce the Vaccine

3    Mandate against Plaintiffs, and requiring the District to, instead, adopt a suitable

4    accommodation for Plaintiffs that will allow them to complete their academic programs on

5    time and as scheduled and contracted-for by Plaintiffs.

6          B.     A declaratory judgment that the Vaccine Mandate is unconstitutional on its

7    face.

8          C.     A declaratory judgment that the Vaccine Mandate is unconstitutional as

9    applied to Plaintiffs.

10         D.     An award of reasonable costs and expenses of this action, including a

11   reasonable attorney's fee, in accordance with 42 U.S.C. §1988; and,

12         E.     Such other and further relief as the Court deems just and proper.

### COUNT 2
### VIOLATION OF ARIZONA'S FREE
### EXERCISE OF RELIGION ACT (FERA)
### (A.R.S. §§ 41-1493 to -1493.02)

16   74.    Plaintiffs reallege and incorporate the allegations set forth in each of the

17   preceding paragraphs as though fully set forth herein.

18   75.    Plaintiffs have sincerely held religious beliefs that compel them to refuse

19   vaccination with abortion-connected vaccines, which includes available COVID-19

20   vaccines. Plaintiffs reallege the discussion of their sincerely held religious beliefs set forth

21   in the preceding paragraphs.

22   76.    The District is a "political subdivision" and "government," as those terms are

23   defined by FERA, and is therefore subject to the provisions of FERA. A.R.S. §41-

24   1493(3),(6).

25

26

27

28

77. FERA provides that "[f]ree exercise of religion is a fundamental right that applies in this state even if laws, rules or other government actions are facially neutral." A.R.S. §41-1493.01(A).

78. FERA bars the District from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless it is both "[i]n furtherance of a compelling governmental interest" and "[t]he least restrictive means of furthering that compelling governmental interest." A.R.S. §41-1493.01(B-C).

79. The District's Vaccine Mandate is a rule of selective applicability that requires proof of COVID-19 vaccination from Plaintiffs and other REL/InEligibles who happen to be assigned to Fall 2021 clinical rotations with one or more Clinical Partners that require universal COVID-19 vaccination for students.

80. The Vaccine Mandate substantially burdens Plaintiffs' free exercise of religion in that it requires Plaintiffs to get vaccinated for COVID-19 in violation of their sincerely held religious beliefs or face removal from their academic programs.

81. The Vaccine Mandate is not the least restrictive means of furthering the District's interest in remaining compliant with its Clinical Partner contracts, which could be achieved by providing Plaintiffs with any one of the academic accommodations alleged in paragraph 30 (a-e) above, among other accommodations.

82. The Vaccine Mandate has caused, is causing, and will continue to cause, irreparable harm to Plaintiffs from the violation of their sincerely held religious beliefs and the punitive academic consequences exacted upon them for exercising those religious beliefs, which include removal from their clinical rotations beginning on November 8, 2021, resulting in a failure (or an incomplete) for the semester and withdrawal from their academic programs.

83. Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional right to the free exercise of their sincerely held religious beliefs.

24

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

A.     A temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the District, its officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, or attempting to enforce the Vaccine Mandate against Plaintiffs, and requiring the District to, instead, adopt a suitable accommodation for Plaintiffs that will allow them to complete their academic programs on time and as scheduled and contracted-for by Plaintiffs.

B.     A declaratory judgment that the Vaccine Mandate is unconstitutional on its face.

C.     A declaratory judgment that the Vaccine Mandate is unconstitutional as applied to Plaintiffs.

D.     An award of reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with A.R.S. §41-1493.01(D); and,

E.     Such other and further relief as the Court deems just and proper.

Dated: October 21, 2021

/s/ Colleen M. Auer
Colleen M. Auer
*Attorney for Plaintiffs*

## **VERIFICATION**

I, Emily Thoms, do state and swear under penalty of perjury, and as permitted by 28 U.S.C. § 1746, as follows:

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and to the best of my knowledge, information and belief, the facts set forth in the pleading are true and accurate.

I declare under penalty of perjury that the foregoing is true and correct

Executed on October 20, 2021.

By: _____
         Emily Thoms

26

## VERIFICATION

I, Kamaleilani Moreno, do state and swear under penalty of perjury, and as permitted by 28 U.S.C. § 1746, as follows:

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and to the best of my knowledge, information and belief, the facts set forth in the pleading are true and accurate.

I declare under penalty of perjury that the foregoing is true and correct

Executed on October _20_ , 2021.

By: _Kamaleilani Moreno_

Kamaleilani Moreno

# EXHIBIT 1



**MARICOPA**
COMMUNITY COLLEGES

Office of Compliance

2411 West 14th Street, Tempe, AZ 85281 • T: 480.731.8893 • F: 480.731.8890 • district.maricopa.edu/legal

September 15, 2021

Emily Thoms

**Via Email**: emi2182088@maricopa.edu

Dear Emily Thoms,

On September 14, 2021, I received a determination letter regarding your request for a religious accommodation. You requested an accommodation to be exempted from receiving the COVID-19 vaccine required by the in-person clinical component of your studies because of your stated position that, "this is a life of naturalistic power, allowing my God and the body my Lord has given me, to deliver the healing necessary for any ailment, including pathogens."

After careful consideration, I have decided that there is no reasonable accommodation that would enable you to meet the requirements for clinical placement without placing an undue hardship upon the College/District in complying with its agreements with clinical partners and in making its student-placement assignments. I have therefore decided to affirm the denial of your religious accommodation request.

Sincerely,

Jason Sweat, Esq.
MCCCD District Compliance

 **MARICOPA**
COMMUNITY COLLEGES | Office of Compliance

2411 West 14th Street, Tempe, AZ 85281 • **T:** 480.731.8893 • **F:** 480.731.8890 • district.maricopa.edu/legal

September 15, 2021

Kamaleilani Moreno

**Via Email:** kam2041520@maricopa.edu

Dear Kamaleilani Moreno,

On September 14, 2021, I received a determination letter regarding your request for a religious accommodation. You requested an accommodation to be exempted from receiving the COVID-19 vaccine required by the in-person clinical component of your studies because of your stated position that, "I whole-heartedly believe that I would be risking my mental and physical health by accepting an Emergency Use Authorization vaccination to attend 3 clinical shifts."

After careful consideration, I have decided that there is no reasonable accommodation that would enable you to meet the requirements for clinical placement without placing an undue hardship upon the College/District in complying with its agreements with clinical partners and in making its student-placement assignments. I have therefore decided to affirm the denial of your religious accommodation request.

Sincerely,

Jason Sweat, Esq.
MCCCD District Compliance

# EXHIBIT 2

# Religious Accommodation Agreement
## (multi-site)

All Nursing and Allied Health students are required to meet the clinical placement requirements as set out by our most stringent clinical partner. This is done because clinical placement assignments are randomly assigned to the available clinical spots assigned to each college within the District. Having all students meet our most stringent clinical partner placement requirements allows the college to engage in random student placement into clinical spots because students have met all requirements from all clinical partner sites.

Our most stringent clinical partner is requiring proof of COVID-19 vaccination by October 1, 2021, which is why MCCCD is requiring vaccination documents to be uploaded to American DataBank by September 30, 2021.

This agreement constitutes MaricopaNursing's and Allied Health reasonable accommodation for those students seeking exemptions from the September 30, 2021 COVID-19 vaccination deadline on religious grounds. By signing this agreement, you acknowledge that you meet the following criteria which will be verified prior to attending all clinical rotations.

_____ (initial) You have submitted a completed and signed Religious Accommodation Request form located at:(https://district.maricopa.edu/regulations/admin-regs/appendices/non-discrimination/nd-4).

_____ (initial) You have met all requirements for clinical placement, except the COVID-19 clinical partner vaccination.

_____ (initial) You are currently a student in [INSERT COLLEGE]'s Maricopa Nursing or Allied Health program.

_____ (initial) You have been assigned to multiple clinical placement locations for Fall 2021 and (check all that apply):

  _____ The sites to which you have been placed all currently DO NOT require a COVID-19 vaccination.

  _____ One site to which you have been placed has granted you an exemption from the COVID-19 vaccine as a religious accommodation (accommodation letter must be attached to this document and must be granted to you as a student and not as an employee of the facility to which you have been assigned).

_____ All of the sites to which you have been placed have granted you an exemption from the COVID-19 vaccine as a religious accommodation (accommodation letters must be attached to this document and must be granted to you as a student and not as an employee of the facility to which you have been assigned).

By signing this agreement, you understand and acknowledge that:

1. If at any time during the Fall 2021 semester, any (one or more) of my clinical placements, for any reason, cancels my placement and I am reassigned to a new placement site, I understand that I must meet all placement requirements from the newly assigned site which may include receiving the COVID-19 vaccine.

2. If at any time during the Fall 2021 semester, any (one or more) of my clinical placements, for any reason, begin to require the COVID-19 vaccination, I understand that I must comply with this mandate within the prescribed timeframe identified by the clinical placement site(s).

3. I understand that I may make a religious accommodation request to the newly assigned clinical site or sites if they are currently accepting student accommodation requests, but there is no guarantee that my request will be granted.

4. I understand that I must meet all placement requirements from the District's most stringent clinical partner on the first day of my newly assigned clinical placement(s).

5. If I refuse to meet all placement requirements, which includes receiving the COVID-19 vaccine and I have not been granted an exemption from receiving the COVID-19 vaccine by the clinical site, I will be out of compliance with program requirements and may be restricted from attending clinical, resulting in failure, withdrawal, or an incomplete for the semester.

_____          _____
Student Signature                                        Date


_____          _____
Student ID                                               College

_To be uploaded in American DataBank/Complio/mCE and provide to program leadership._

# EXHIBIT 3

# Religious Accommodation Disclosure and Acknowledgement Form

All Nursing and Allied Health students are required to meet the clinical placement requirements as set out by our most stringent clinical partner. This is done because clinical placement assignments are randomly assigned to the available clinical spots assigned to each college within the District. Having all students meet our most stringent clinical partner placement requirements allows the college to engage in random student placement into clinical spots because students have met all requirements from all clinical partner sites.

Our most stringent clinical partner is requiring proof of COVID-19 vaccination by October 1, 2021, which is why MCCCD is requiring vaccination documents to be uploaded to American DataBank by September 30, 2021.

## DISCLOSURE

This Religious Accommodation Disclosure and Acknowledgement Form outlines a reasonable accommodation by Maricopa Nursing and Allied Health for those of its nursing students who are currently seeking exemptions from the September 30, 2021 COVID-19 vaccination deadline on religious grounds. By signing this form, you acknowledge that you meet all of the following criteria required to receive this reasonable accommodation, which will be verified by the Maricopa County Community College District ("MCCCD") prior to the commencement of your clinical rotations in the Fall of 2021.

## ACKNOWLEDGEMENT

You hereby attest and acknowledge that:

_____ (initial) You are currently a student in [INSERT COLLEGE]'s Maricopa Nursing or Allied Health program.

_____ (initial) You have uploaded a completed and signed Religious Accommodation Request form available at (https://district.maricopa.edu/regulations/admin-regs/appendices/non-discrimination/nd-4) to American DataBank.

_____ (initial) You have met all requirements for clinical placement, including receiving any necessary exemptions from COVID-19 vaccination requirements at your assigned clinical sites for the Fall 2021 semester, as noted below (check all that apply):

_____ All of the clinical sites to which you have been assigned DO NOT require you to be vaccinated for COVID-19 at this time (attach a list of your assigned clinical sites, which is dated and signed by you).

_____ All of the clinical sites to which you have been assigned have granted you an exemption from their respective COVID-19 vaccination requirements as a religious accommodation (the accommodation letters must be attached to this document and must grant you the accommodation as a nursing student rather than as an employee of the facility).

_____ All of the clinical sites to which you have been assigned either DO NOT require you to be vaccinated for COVID-19 at this time and/or have granted you an exemption from their respective COVID-19 vaccination requirements as a religious accommodation (attach a list of your assigned clinical sites, which is dated and signed by you, along with any accommodation letters, which must grant you the accommodation as a nursing student rather than as an employee of the facility).

You understand and acknowledge that:

(1) this reasonable accommodation is contingent upon there being: (i) no changes or cancellations to your assigned clinical sites for the Fall of 2021 that subject you to a new, mandatory COVID-19 vaccination requirement; and, (ii) no changes in the COVID-19 vaccination policies at your assigned clinical sites that subject you to a new, mandatory COVID-19 vaccination requirement;

(2) if there are changes or cancellations to your assigned clinical site(s) for the Fall of 2021 that subject you to a new, mandatory COVID-19 vaccination requirement, you will have to seek and secure a religious exemption from each existing and/or newly assigned clinical site imposing this requirement in order to retain this reasonable accommodation, which may not be possible and is not guaranteed; and,

(3) this reasonable accommodation will only apply for so long as you are exempted from COVID-19 vaccination requirements by all of your assigned clinical sites throughout the entirety of your clinical rotations at those assigned sites, and without this reasonable accommodation, or an alternative reasonable accommodation from your assigned clinical sites and/or MCCCD, you will be out of compliance with program requirements and may be restricted from attending clinical, which means you will be removed from your current placement/class with a clinical component, and likely the program of study, thus delaying your completion of the program.

_____          _____
Student Signature                        Date


_____          _____
Student ID                               College

*To be uploaded in American DataBank and provided to program leadership.*

# EXHIBIT 4



Douglas A. Ducey
Governor

Joey Ridenour
Executive Director AZBN

## ARIZONA STATE BOARD OF NURSING

### DECLARATION:

### TEMPORARY WAIVER OF APPLICABLE PROFESSIONAL LICENSURE REQUIREMENTS (Emergency Measures for COVID-19)

On March 11, 2020, the Arizona Governor, Doug Ducey, issued a Declaration of Emergency related to the COVID-19 pandemic.

On March 20, 2020, the Arizona Department of Health Services ("ADHS") issued Administrative Order 2020-01 (Emergency Measures for COVID-19) ("Order"). Pursuant to this Order, Arizona Revised Statutes ("A.R.S.") § 36-787(A)(6) provides authority for the Director of the Arizona Department of Health Services ("Director") to, "in conjunction with applicable professional licensing boards," establish "a process for temporary waiver of the professional licensure requirements necessary for the implementation of any measures required to adequately address the state of emergency . . ."

The Arizona State Board of Nursing ("Board") asserts that the COVID-19 is an occurrence of a pandemic disease that poses a substantial risk of a significant number of human fatalities. The Board asserts that, as a result of this substantial risk, permitting temporary waivers of certain professional licensing requirements will 1) allow all qualifying individuals who would fall under the Board's jurisdiction, have licenses or certificates in good standing in another state, and who are in need of a waiver due to not holding, or being eligible for, a multistate compact license, to begin practicing in Arizona if granted Board approval; 2) allow expired Arizona licensees and certificate holders who do not have prior discipline or safety concerns, but have not met their practice hours requirements recently (within five years), to renew their licenses and certificates to provide needed services; 3) provide waivers for educational programs to help prevent spread of COVID-19 by allowing programs under the Board's jurisdiction to apply for and, if qualifying, receive a waiver to substitute online teaching for in person teaching, and substitute direct patient care clinicals/instruction with simulations during the State of Emergency, to minimize transmission of COVID-19 between students and patients. Finally, requiring waiver applicants to agree to release the Board and the State of Arizona from liability or administrative review related to the waivers will prevent unnecessary litigation during a State of Emergency, allowing Board and State employees to focus on processing emergency waivers and other issues related to the State of Emergency (Note: all other existing legal recourse for constituents remains in place, as this legal release provision applies only to the temporary, emergency waivers.)

A.R.S. Title 32, Chapter 15, particularly Article 2 (Sections 32-1635, 32-1635.01, 32-1640, 32-1644, 32-1645-1648, and Arizona Administrative Code Title 4, Chapter 19, particularly Articles 2, 3 (and Section R4-19-304), 5 (and Section R4-19-507), and 8 (Section R4-19-807).

The following are the Arizona State Board of Nursing's ("Board's") processes created to address the State of Emergency and mitigate the spread of COVID-19:

1. Any applicant for a temporary, emergency waiver agrees that the Board's decision is final, and the applicant releases the Board and the State from any causes of action related to the waiver application process, or possible revocation of the waiver in the future.

2. At its sole discretion, the Board may deny any waiver applications, or summarily revoke any waivers it previously granted, upon making a finding that the waiver for that individual or program may endanger the health, safety or welfare of the public. Any such denial or revocation action is final and is not subject to legal review.

3. The Board may delegate actions related to the temporary, emergency waivers to its designee, so that expeditious decisions may be made, as needed, during the State of Emergency. If this function is delegated, all such waivers granted, denied, or revoked, will be reported for information to the Board by the Board designee at each regularly scheduled meeting.

4. The Board may accept applications for temporary licensure from nurses of any level (including LPN, RN, APRN), nursing assistants, or certified medication assistants if the applicant holds an active, equivalent license or certificate in good standing in another state, and does not have currently or any history of license/certificate probation, revocation, application denial, or surrender. (Note: Nurses who already hold multistate compact licenses do not require any approval prior to working in other compact member states, including Arizona.) The Board will follow the existing law and internal processes for temporary licensure/certification, with the applicable modifications needed for the emergency, temporary waivers.

5. The Board may grant a temporary 90 day license or certificate to applicants described in #4, above. This temporary license or certificate may be renewed at 90 day intervals following the same process, while the Declaration of Emergency is in effect.

6. Upon receiving a temporary Arizona license or certificate renewal application, the Board may waive practice hours requirements and grant temporary renewals for 90 days for Arizona nurse (all levels), nursing assistant, and certified medication assistant licenses and certificates for individuals who have not met their required practice hours since their last renewal, if the renewal period was within the past 5 years, and the licensees/certificate holder does not have a prior history of license/certificate probation, revocation, application denial, or surrender.

7. Upon receiving a written application, the Board may grant temporary, 90 day nursing assistant or medication assistant certificates to pre-licensure nursing students who provide official proof from their nursing program that they have successfully completed, at minimum, one semester of instruction in a pre-licensure nursing program approved by the Board or another state board of nursing, and who pass the state nursing assistant examination. This temporary certificate may be renewed at 90 day intervals following the same process, while the Declaration of Emergency is in effect.

8. Upon receiving a written application, the Board may temporarily waive specific teaching requirements (see below) for Board-approved nursing, nursing assistant, and medication assistant programs for one calendar year and may be renewed at one calendar year intervals following the same process, while the Declaration of Emergency is in effect. The requirements that may be waived include: a.) to substitute simulations, lab hours, and similar non-direct patient contact for required direct patient care clinical/instruction hours; b) to provide all classroom/didactic teaching electronically, rather than in-person.

2

Case 2:21-cv-01781-SPL   Document 1   Filed 10/21/21   Page 41 of 58

The program's application for temporary waiver of requirements must describe all requested program modifications, and how the modification will provide adequate learning opportunities.

SEAL

Joey Ridenour, R.N., M.N.,
F.A.A.N. Executive Director
ARIZONA STATE BOARD OF NURSING

3

# EXHIBIT 5

| | |
|---|---|
| **From:** | Emma Mamaluy |
| **To:** | cauernd14@gmail.com |
| **Subject:** | Re: An Afterthought |
| **Date:** | Tuesday, October 5, 2021 8:23:03 PM |
| **Attachments:** | 2021 renewal - Re_waiver - Maricopa.pdf |
| | MCCCD application 2020.08.13. COVID update (2).pdf |

Hello Colleen,

Below, please find the information I have related to your public records requests about MCCCD and requests for Emergency Waiver approval:

1. Effective dates (start to finish) of first waiver: March 19, 2020 to March 19, 2021
2. Application date of renewal: August 12, 2021 to August 20, 2022
3. Whether renewal waiver was granted? Yes

I do not yet have a date for the renewal, but I will follow up on that.

I'm attaching the communications that formed the application for the waiver and the renewal of same.

Thank you,
Emma

Emma Lehner Mamaluy

Chief Counsel

Arizona State Board of Nursing

1740 West Adams, Suite 2000

Phoenix, Arizona 85007

Direct Line: 480-319-0568

**Urgent matters:** Please contact my legal assistant, Trina Smith, at 602-771-7844, or tsmith@azbn.gov

**Confidentiality Notice:** This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this information is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

On Tue, Oct 5, 2021 at 1:11 PM <cauernd14@gmail.com> wrote:

Emma,

Thanks for your time today.  I realized after we spoke that it would be important for me to get copies of the clinical waiver applications submitted by MCCCD to the AZBON because, in those applications, MCCCD must:

> "describe all requested program modifications, and how the modification will provide adequate learning opportunities."

So, please consider this a public records request to the AZBON for copies of all of the applications for clinical waivers for its nursing programs submitted by MCCCD to the AZBON pursuant to the Board's 2020 "Declaration" (Emergency Measures for COVID-19).  I understand that it may take staff some time to gather this information, which is fine.  Thanks.

Sincerely,

Colleen M Auer

**AUER LAW FIRM PLLC**

11445 E Via Linda, STE 2-529

Scottsdale, Arizona 85259

cauernd14@gmail.com

602-370-7965

 Gmail                  **Lyn Ledbetter <lledbetter@azbn.gov>**

---

## Board notification update
2 messages

---

**Margi Schultz <schultz@gatewaycc.edu>**            Thu, Aug 13, 2020 at 11:17 AM
Reply-To: schultz@gatewaycc.edu
To: Lyn Ledbetter <lledbetter@azbn.gov>

Lyn - I don't mean to fill up your inbox, but the only thing that has changed in the note below is that we will be extending our same processes throughout the fall semester. Just letting you know! Thanks, Margi



**Margi J. Schultz, PhD, RN, CNE, FAADN**
**GateWay Community College**
**MARICOPA COMMUNITY COLLEGES**
Director, Nursing Division
Administrator, MaricopaNursing, District Office
108 N. 40th Street, Phoenix, AZ 85034
schultz@gatewaycc.edu
https://www.gatewaycc.edu/
O: 602-286-8530
LinkedIn | Twitter | Facebook

## Adversity is Opportunity in Disguise...

On Thu, Mar 19, 2020 at 11:49 PM Margi Schultz <schultz@gatewaycc.edu> wrote:
Hi Lyn - please accept this notification on behalf of the eight MaricopaNursing colleges for our modified plan for the remainder of the spring 2020 semester.

This email serves as notice to the Arizona State Board of Nursing that all face-to-face classes have been delayed at all eight MaricopaNursing colleges effective March 16, 2020 through April 5, 2020. Classes will resume in an online/distance format on April 6, 2020 through the remainder of the spring 2020 semester ending on May 8, 2020. There is an option to continue all classes for two weeks beyond the May 8 end date should faculty feel additional time is needed to work with students.

This change in teaching modality impacts the Nursing Assistant (NA), Licensed Practical Nurse (LPN), the RN Nurse Refresher, and the Associate of Applied Science in Nursing programs. While MaricoaNursing will not have students in face-to-face lecture, skills labs, clinical, or simulation during this time, the competencies of the didactic and clinical content have been mapped to online activities and "traditional" lecture will continue by faculty using synchronous "Zoom" meetings for lecture and also asynchronous components. Virtual simulation and synchronous labs as well as other activities are planned to collaborate with the students to meet all competencies to successfully complete the semester.

Faculty at all colleges have worked diligently to collaborate with students and create an interactive learning environment. A modified testing plan for MaricopaNursing has been drafted to accommodate the remote testing which will need to be implemented and this will be shared with the AZBN when finalized. Please do not hesitate to contact any of the MaricopaNursing Directors should you have questions or concerns.

Margi Schultz on behalf of MaricopaNursing Leadership Council -
Karen Flanigan, Chandler Gilbert CC
Roni Collazo, Estrella Mountain CC
Margi Schultz, GateWay CC
Susan Mayer, Glendale CC
Mary Boyce, Mesa CC
Nick DeFalco, Paradise Valley CC

Salina Bednarek, Phoenix CC
Karen Hobbs, Scottsdale CC



**Margi J. Schultz, PhD, RN, CNE, FAADN**
**GateWay Community College**
**MARICOPA COMMUNITY COLLEGES**
Director, Nursing Division
Administrator, MaricopaNursing, District Office
108 N. 40th Street, Phoenix, AZ 85034
schultz@gatewaycc.edu
https://www.gatewaycc.edu/
O: 602-286-8530
LinkedIn | Twitter | Facebook

---

**Lyn Ledbetter** <lledbetter@azbn.gov>        Thu, Aug 13, 2020 at 11:18 AM
To: Pre-Licensure Gateway Community College - Maricopa Nursing ADN <schultz@gatewaycc.edu>

thank you!

Lyn Ledbetter
Administrative Assistant
Education Department
Email: lledbetter@azbn.gov



1740 W. Adams St.
Phoenix, AZ 85007

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information exempt from disclosure under applicable law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by email and destroy all copies of the original message and attachments. Thank you.

[Quoted text hidden]

Case 2:21-cv-01781-SPL Document 1 Filed 10/21/21 Page 47 of 58

 **Gmail**

**Emma Mamaluy** <emamaluy@azbn.gov>

---

## Re: waiver - Maricopa
1 message

---

**Emma Mamaluy** <emamaluy@azbn.gov>                          Tue, Oct 5, 2021 at 8:15 PM
To: Emma Mamaluy <emamaluy@azbn.gov>

---

---------- Forwarded message ----------
From: **Margi Schultz** <schultz@gatewaycc.edu>
Date: Thu, Aug 12, 2021 at 11:27 AM
Subject: waiver
To: Lyn Ledbetter <lledbetter@azbn.gov>

Lyn - this is to serve as the MaricopaNursing renewal for our simulation/clinical experience waiver. I know it is time to renew. Please let me know if you have any questions and if I need to place this on the drive... thanks, Margi

This email serves as renewal notice to the Arizona State Board of Nursing that some face-to-face classes, labs, and clinical have been modified at all eight MaricopaNursing colleges effective August 11, 2021. This change in teaching modality may impact the Nursing Assistant (NA), Licensed Practical Nurse (LPN), the RN Nurse Refresher, and the Associate of Applied Science in Nursing programs.

While MaricoaNursing will have many students in face-to-face lecture, skills labs, clinical, and/or simulation during this academic year, the competencies of the didactic and clinical content have been mapped to online activities and "traditional" lecture will continue face-to-face or virtually as required by the current status of the pandemic. Faculty at all colleges have worked diligently to collaborate with students and create an interactive online learning environment as needed.

A modified testing plan for MaricopaNursing has been drafted to accommodate remote testing when/if needed. Please do not hesitate to contact any of the MaricopaNursing Directors should you have questions or concerns.

Respectfully,
Margi Schultz on behalf of MaricopaNursing Leadership Council -
Karen Flanigan, Chandler Gilbert CC
Roni Collazo, Estrella Mountain CC
Margi Schultz, GateWay CC
Grace Paul, Glendale CC
Mary Boyce, Mesa CC
Jessica Bruhn, Paradise Valley CC
Constance Powers, Phoenix CC
Deborah Dollmeyer, Scottsdale CC



**Margi J. Schultz, PhD, RN, CNE, FAADN**
**GateWay Community College**
**MARICOPA COMMUNITY COLLEGES**
Director, Nursing Division
Administrator, MaricopaNursing, District Office
108 N. 40th Street, Phoenix, AZ 85034
schultz@gatewaycc.edu
https://www.gatewaycc.edu/
O: 602-286-8530
LinkedIn | Twitter | Facebook

## Adversity is Opportunity in Disguise...

# EXHIBIT 6

Case 2:21-cv-01781-SPL Document 1 Filed 10/21/21 Page 50 of 58

clinical rotations and accommodated virtual simulations is the missing link.

**Claire PVCC**
Mary I also was given a simulation on campus to make up for our in person clinical at Mayo because the school said someone wasn't in compliance in our group which I don't think was true

**Claire PVCC**



VZW Wi-Fi    7:39 PM

< Back    Announcement Details
PV 2021-FALL-NUR283 19672

## CLINICAL GROUP 2

Kate Raciak, MSN, RN, C-EFM
Aug 31, 2021 at 5:21 PM

Please note that clinical group 2 did not meet the compliancy expectation by the hospital's deadline, so the first day of clinical at the hospital has been cancelled. Professor Tracy will be looking at the schedule to determine a SIM date, hopefully the same date as planned.

-Professor Kate

**Replies**

Send Message...

# EXHIBIT 7

| | |
|---|---|
| **From:** | Emily Thoms |
| **To:** | cauernd14@gmail.com |
| **Subject:** | Fwd: Jared Christy (MCC Nursing Dept Information Items) just sent you a message in Canvas. |
| **Date:** | Monday, October 11, 2021 4:48:37 PM |

---------- Forwarded message ---------
From: **Emily Thoms** <emi2182088@maricopa.edu>
Date: Mon, Oct 11, 2021, 13:52
Subject: Fwd: Jared Christy (MCC Nursing Dept Information Items) just sent you a message in Canvas.
To: <ehudson52492@gmail.com>

---------- Forwarded message ---------
From: **Jared Christy** <notifications@instructure.com>
Date: Wed, Oct 6, 2021, 13:01
Subject: Jared Christy (MCC Nursing Dept Information Items) just sent you a message in Canvas.
To: <EMI2182088@maricopa.edu>

**Final COVID Update for Fall (Blocks 1, 2 and 3)**

Greetings,

If you are Block 4 you have already been cleared you can move on. I will update you next week.

Blocks 1, 2 and 3,

This is my final COVID update (fingers crossed). Items submitted in mCE without prior permission from me will be rejected. We need to sync accounts. I am getting submissions that state "it doesn't work". I know you have uploaded your docs but you are missing a step. If that is the case come and see me. M-F 8am-3pm

Remember the process was:

American DataBank----------------------->Await Approval in ADB---------Sync with mCE

Please students who are "all good" ask everyone in your classroom if they need some help. It is going to take all of us to get this done.

Thank you

PMA (trying at least) all day

Jared

 Jared Christy

You can reply to this message in Canvas by replying directly to this email. If you need to include an attachment, please log in to Canvas and reply through the Inbox.

View this message in Conversations  |  Update your notification settings

# EXHIBIT 8



**MARICOPA**
COMMUNITY COLLEGES

September 14, 2021

Re: Religious accommodation request related to the COVID-19 Vaccination

Dear Emily Thoms;

On September 10, 2021, I received a request for religious accommodation from you asking to be allowed to forego receiving the COVID-19 vaccine. On the Religious Accommodation Request Form, you shared that "this is a life of naturalistic power, allowing my God and the body my Lord has given me, to deliver the healing necessary for any ailment, including pathogens" as a primary reason you are requesting an accommodation on religious grounds.

As stated in ND-4 Religious Accommodation Procedures and Request form, your request has been reviewed by me and the Academic Chair of the Nursing Program at your college. After careful consideration, we have decided to deny your requested religious accommodation and approve an alternative reasonable accommodation. The justification is outlined below:

Denial of the requested accommodation:

1. Religious accommodations are made on a case-by-case basis taking into account many factors, including the impact such an accommodation will have on the educational environment as a whole. While we can approve your religious accommodation request to forego receiving the COVID-19 vaccine while you are participating in classroom instruction and activities on the college campus, we cannot remove a requirement for placement at a clinical site, as this would constitute an undue hardship upon the College/District.

2. The classes you are registered for require an in-person clinical component. Clinical placements are negotiated through healthcare partners and students have always been required to meet all required health and safety requirements related to clinical placement, as outlined by our most stringent clinical partner. The college cannot change its requirements for program completion, exempt students from, or remove academic or clinical components that are part of its approved and accredited program of study as this would constitute an undue hardship upon the College/District.

You are being granted the following accommodations:

1. Exception to the Withdrawal policy. If you choose to withdraw from your classes that have a clinical component, you may submit this determination letter and you will be granted an exception to the refund policy.

2. Possible Readmission 2022. You may work with your faculty member(s) to complete the exit interview form. During this interview, you can indicate if you wish to be considered for placement in the subsequent two semesters (not counting summer). Placement is dependent on space available and the clinical requirement for the COVID-19 vaccine may still be in place for our clinical facilities.

As part of this accommodation request process, this decision has been forwarded to the Compliance office for review. You should receive correspondence from the Compliance office within the next 72 hours. If you would like to reach out to them directly, please feel free to email compliance@domail.maricopa.edu.

Sincerely,

Margi J. Schultz, PhD, RN, CNE, PLNC, FAADN
Administrator, MaricopaNursing



September 14, 2021

Re: Religious accommodation request related to the COVID-19 Vaccination

Dear Kamaleilani Moreno;

On September 10, 2021, I received a request for religious accommodation from you asking to be allowed to forego receiving the COVID-19 vaccine. On the Religious Accommodation Request Form, you shared that "I whole-heartedly believe that I would be risking my mental and physical health by accepting an Emergency Use Authorization vaccination to attend 3 clinical shifts" as one of the reasons you are requesting an accommodation on religious grounds.

As stated in ND-4 Religious Accommodation Procedures and Request form, your request has been reviewed by me and the Academic Chair of the Nursing Program at your college. After careful consideration, we have decided to deny your requested religious accommodation and approve an alternative reasonable accommodation. The justification is outlined below:

Denial of the requested accommodation:

1. Religious accommodations are made on a case-by-case basis taking into account many factors, including the impact such an accommodation will have on the educational environment as a whole. While we can approve your religious accommodation request to forego receiving the COVID-19 vaccine while you are participating in classroom instruction and activities on the college campus, we cannot remove a requirement for placement at a clinical site, as this would constitute an undue hardship upon the College/District.

2. The classes you are registered for require an in-person clinical component. Clinical placements are negotiated through healthcare partners and students have always been required to meet all required health and safety requirements related to clinical placement, as outlined by our most stringent clinical partner. The college cannot change its requirements for program completion, exempt students from, or remove academic or clinical components that are part of its approved and accredited program of study as this would constitute an undue hardship upon the College/District.

You are being granted the following accommodations:

1. Exception to the Withdrawal policy. If you choose to withdraw from your classes that have a clinical component, you may submit this determination letter and you will be granted an exception to the refund policy.

2. Possible Readmission 2022. You may work with your faculty member(s) to complete the exit interview form. During this interview, you can indicate if you wish to be considered for placement in the subsequent two semesters (not counting summer). Placement is dependent on space available and the clinical requirement for the COVID-19 vaccine may still be in place for our clinical facilities.

As part of this accommodation request process, this decision has been forwarded to the Compliance office for review. You should receive correspondence from the Compliance office within the next 72 hours. If you would like to reach out to them directly, please feel free to email compliance@domail.maricopa.edu.

Sincerely,

Margi J. Schultz, PhD, RN, CNE, PLNC, FAADN
Administrator, MaricopaNursing