AUER LAW FIRM PLLC
Colleen Auer (014637)
11445 E. Via Linda, STE 2-529
Scottsdale, Arizona 85259
Telephone: (602) 370-7965
cauernd14@gmail.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily Thoms and Kamaleilani Moreno,<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County Community College District,<br><br>Defendant. | No.<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs move, pursuant to Federal Rules of Civil Procedure 65, for a temporary restraining order and/or preliminary injunction restraining and enjoining the Maricopa County Community College District ("District"), its officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, or attempting to enforce the District's COVID-19 vaccination mandate ("Vaccine Mandate") against Plaintiffs, and requiring the District to, instead, adopt a suitable accommodation for Plaintiffs that will allow them to complete their academic programs on time and as scheduled and contracted-for by Plaintiffs.

This relief is warranted on the following grounds, as more fully set forth in the accompanying Memorandum of Points and Authorities:

►Plaintiffs are likely to succeed on the merits because the Vaccine Mandate, on its face and as applied to Plaintiffs, substantially burdens their fundamental right to the free exercise of their Christian religion and is not the least restrictive alternative available to the District to further its singular interest in remaining compliant with its contractual commitments to its Clinical Partners for clinical placements;

►Plaintiffs will suffer irreparable harm in the absence of the requested relief because the District's conditioning of its ongoing educational services to Plaintiffs on their submission to COVID-19 vaccination is forcing Plaintiffs to choose between the precepts of their religion and forfeiting the educational benefits for which they have contracted, labored, and paid; and,

►Both the balance of equities and the public interest favor granting the requested relief under the circumstances of this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **MATERIAL FACTS**

This Motion stems from a COVID-19 vaccine mandate recently imposed by the District on its nursing and allied health students ("N&AH Students") as a prerequisite to their performance of Fall 2021 clinicals and the completion of their academic programs (the "Vaccine Mandate"). Cmplt. ¶2.

The District's original Vaccine Mandate, issued on August 25, 2021, required all N&AH Students to provide proof of COVID-19 vaccination by September 30, 2021 (the "Compliance Deadline") to comply with the clinical placement requirements of the District's most stringent Clinical Partner. *Id.* at ¶¶16-20. The District claimed this universal vaccination requirement was necessary because clinical placements are randomly assigned to N&AH Students based on available clinical spots for each college, and therefore any student could be assigned to the District's most stringent Clinical Partner. *Id.* at ¶17.

But, in truth, the District's clinical assignment process is quite different. Indeed, it is not done by random assignment. *Id.* at ¶18. Rather, N&AH Students are allowed to pick

2

their top three (3) clinical-site preferences, and the District makes assignments to accommodate those listed preferences. *Id*. Thus, the District can, and does, suit clinical assignments to its N&AH Students' preferences. *Id*.

It follows that the District's one-size-fits all Vaccine Mandate for its N&AH Students is not a matter of necessity attributable to the District's clinical placement procedure. *Id.* Rather, it is a matter of expedience and ease of administration for the District, which ensures the District invariably satisfies its contractual commitments to its Clinical Partners for clinical placements regardless of the fundamental rights it tramples in the process. *Id.* at ¶39.

Yet, history reflects that when the District wants to accommodate its students' particular needs, it is more than capable of doing so. For example, in the recent past the District has: (i) provided simulation of the same clinical experiences at issue in lieu of in-person clinicals for its N&AH Students who graduated in December 2020 and May/June 2021 during the height of the COVID-19 pandemic when few, if any, clinical placements were available; (ii) substituted simulation of clinical experiences for in-person clinical days for a group of students who failed to timely meet non-vaccination, clinical placement criteria; and, (iii) deferred the deadline for three (3) blocks of students to meet non-vaccination, clinical placement criteria. *Id.* at ¶32a-c.

By the same token, when the District is unsympathetic to its students' particular needs, it will make no effort to accommodate them. That is the case here for N&AH Students, including Plaintiffs, united in their conscientious religious objections as Christians to being inoculated with any of the available COVID-19 vaccines because they all employ fetal cell lines derived from procured abortion in testing, development or production. *Id.* at ¶¶49-50. Instead of crafting a thoughtful vaccination policy designed to meets its contractual commitments to both its Clinical Partners *and* its students, while also respecting the students' fundamental right to the free exercise of their religion, the District chose to adopt a universal and unyielding Vaccine Mandate. *Id.* at ¶¶28-32, 36-42. And,

it did so, before it knew the vast majority of its Clinical Partners' and affiliates' positions on COVID-19 vaccination for students placed at their facilities. *Id.* at ¶40a.

Further, the District has rejected at least five (5) available accommodations in lieu of vaccination – including the previously-adopted simulation of the same clinical experiences at issue used in lieu of in-person clinicals to educate pandemic-era graduates – proposed by Plaintiffs (and similarly-situated students) as an undue hardship on the District. *Id.* at ¶30a-e.

Only after the District learned that certain of its Clinical Partners were not requiring COVID-19 vaccination for clinical placements (32%) and others required COVID-19 vaccination (68%) but might permit religious exemptions, did it begrudgingly change its stance on the Vaccine Mandate. *Id.* at ¶¶22-23. As of September 16, 2021, the District began allowing N&AH Students placed with Clinical Partners for Fall 2021 clinicals who either (i) did not require or (ii) offered exemptions to COVID-19 vaccination, to request a religious accommodation from the District (the "REL/Eligibles"). *Id.* at ¶24.

If granted, the accommodation would consist of an extension of the District's Compliance Deadline for the Vaccine Mandate from September 30, 2021 through the end of the student's Fall 2021 clinicals (the "Accommodation"). *Id.* at ¶23. Since N&AH Students have two (2) placements with different Clinical Partners for Fall 2021 clinicals, both Clinical Partners have to exempt the student from COVID-19 vaccination requirements in order for the student to receive an Accommodation that will extend through the end of their Fall 2021 clinicals. *Id.* at ¶25.

Unfortunately for Plaintiffs, they have Fall 2021 placements with at least one Clinical Partner who mandates COVID-19 vaccination without exemption. *Id.* at ¶26. So, they (and similarly-situated students) are not eligible for an Accommodation that extends through the end of their Fall 2021 clinical rotations. *Id.* Nor will the District grant Plaintiffs an alternative academic accommodation for this particular 3-day clinical rotation which commences on November 8, 2021, despite their repeated requests for same. *Id.* at ¶¶56, 63.

4

Instead, the District will pull Plaintiffs – seniors in good standing slated to graduate from MCC with an Associate in Applied Science in Nursing Degree on December 17, 2021 – from their Fall 2021 rotations commencing on November 8, 2021, resulting in a failure (or an incomplete) for the semester and removal from their educational programs for which they contracted, labored, and paid. All because Plaintiffs exercised their sincere religious beliefs opposing COVID-19 vaccination. *Id.* at ¶¶56-57, 63-64.

## II. RULE 65(b)(1)(B) NOTICE OF MOTION TO THE DISTRICT

Pursuant to Rule 65(b)(1)(B), undersigned counsel for Plaintiffs ("Counsel") hereby certifies that the District was put on written and verbal notice by Counsel during the period September 7, 2021 through October 14, 2021 that Plaintiffs (and similarly-situated students) were in need of an accommodation from the District which would allow these students to complete their educational programs without forfeiting their fundamental right to the free exercise of their religious convictions opposed to compulsory COVID-19 vaccination. Counsel's communications with the District during this period include, but are not limited to, the following:

►September 7, 2021 letter to the District's Office of Compliance on behalf of Plaintiffs and five (5) similarly-situated students, requesting clarification and modification of the District's COVID-19 vaccination declination policy and the opportunity to meet and confer on the subject;

►September 13, 2021 letter to the District Board requesting modification of the District's COVID-19 vaccination declination policy to allow for an accommodation for students opposed to the vaccine on, *inter alia*, religious grounds;

►September 22, 2021 Zoom meeting with the District's Provost, Interim General Counsel, and outside counsel to discuss the District's COVID-19 vaccination declination policy and available accommodations for students opposed to the vaccine on, *inter alia*, religious grounds;

5

►September 28, 2021 Zoom meeting with the District's Interim General Counsel to discuss the District's ability to provide simulation of clinical experiences as a reasonable accommodation for students opposed to the vaccine on, *inter alia*, religious grounds;

►September 28, 2021 Email to the District's Interim General Counsel stating the reasons why simulation of clinical experiences is both an appropriate and reasonable accommodation for students opposed to the vaccine on religious grounds;

►October 4, 2021 Email to the District Board President and a Board member requesting modification of the District's COVID-19 vaccination declination policy to allow simulation of clinical experiences as a reasonable accommodation for students opposed to the vaccine on religious grounds; and,

►October 14, 2021 Zoom meeting with the District's Interim General Counsel and Outside Counsel to discuss (i) the vaccination requirements of the District's 36 major Clinical Partners and their affiliates, and (ii) a reasonable accommodation for students with Fall 2021 placements with at least one Clinical Partner with universal COVID-19 vaccination requirements for students.

Counsel was advised at the final meet and confer on October 14, 2021 that none of the academic accommodations proposed to the District, including simulation of clinical experiences, was acceptable, and there were no other known, reasonable accommodations that the District could provide to Plaintiffs (and similarly-situated students) that would allow these students to complete their academic programs without forfeiting their fundamental right to the free exercise of their religious convictions opposed to compulsory COVID-19 vaccination. At the close of that meeting, Counsel advised the participants that this Motion would be forthcoming.

III. **ARGUMENT**

    A. **PRELIMINARY INJUNCTION STANDARD**

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Young at Heart LLC v. Atlatl Grp.*, No. CV-20-00918-PHX-MTL, *Fastcase* at *1 (D. Ariz. June 4, 2020). To secure a preliminary

6

injunction, Plaintiffs must show that: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of a preliminary injunction, (3) the balance of equities tips in their favor, and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).

### B. THE FREE EXERCISE CLAUSE

"The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, 'protects religious observers against unequal treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza v. Montana Dept. of Rev.*, ─── U.S. ───, 140 S. Ct. 2246, 2254 (2020) (quoting Trinity Lutheran Church of Columbia, Inc. v. Comer , ─── U.S. ───, 137 S. Ct. 2012, 2021 (2017)). In order to demonstrate a violation of the Free Exercise Clause, "a litigant must show that challenged state action has a coercive effect that operates against the litigant's practice of his or her religion." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985). Put another way, the challenged government conduct must substantially burden a religious practice. *American Family Association, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114, 1123 (9th Cir. 2002).

"[A] 'substantial burden' is imposed when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbet*) or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*). *Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058 (9th Cir. 2008) (emphasis added) (citing *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). The Supreme Court has found a substantial burden "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981). Although such "compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Id.* at 718.

7

As a political subdivision of the state, the District may substantially burden a person's free exercise of religion only if it demonstrates that application of the burden to the person (i) furthers a compelling governmental interest; and (ii) is the least restrictive means of furthering that interest. *See e.g., Thomas*, 450 U.S. at 718 ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest."); *accord* A.R.S. §41-1493.01(C).

### C. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

The District's August 25, 2021 Vaccine Mandate, as amended on September 16, 2021, substantially burdens Plaintiffs' free exercise of religion because it forces Plaintiffs to choose between following the tenets of their Christian religion and receiving the remainder of their contracted-for educational services from the District. And, the District cannot justify this inroad on Plaintiffs' religious liberty by showing that it is the least restrictive means of achieving some compelling interest of the District.

To the contrary, the District's only interest is in complying with its contractual commitments to its Clinical Partners to adhere to their respective clinical placement requirements. And, there are at least five (5) less restrictive alternatives (Cmpl. ¶30a-e) that the District could employ to achieve that interest without putting pressure on Plaintiffs to violate their sincere religious beliefs as a condition to receiving the remainder of their contracted-for educational services from the District.

### D. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Plaintiffs face irreparable injury absent a temporary restraining order and/or preliminary injunction barring enforcement of the Vaccine Mandate. Because their Christian religion forbids them from taking any of the COVID-19 vaccines, the District's threat of removing them from their academic programs if they do not get vaccinated by November 8, 2021 is forcing Plaintiffs to choose between following their religious beliefs and suffering the deprivation of these educational benefits, and abandoning their religious beliefs to avoid this deprivation. This is a violation of their right to the free exercise of

8

their religion under governing law. *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir.1997) (noting "that 'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs' infringes on the free exercise of religion") (quoting *Thomas*, 450 U.S. at 718); *see also Sherbert*, 374 U.S. at 404 (noting that forcing someone "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand . . . . puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship").

Finally, under Ninth Circuit law, "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973-74 (9th Cir.2002) (internal citations omitted); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary injunction); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §2948.1 (2d ed. 2004 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

Because Plaintiffs have, at a minimum, raised a colorable claim that the exercise of their religious beliefs have been infringed, they have sufficiently established that they will suffer irreparable injury absent a temporary restraining order and/or a preliminary injunction barring enforcement of the Vaccine Mandate against them.

E. **THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR GRANTING A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION**

This case raises serious First Amendment questions and compels a finding that the potential for irreparable injury exists. Balanced against the District's competing interest in complying with its Clinical Partner contracts, "the balance of hardships tips sharply in

9

[Plaintiffs'] favor." *See Sammartano*, 303 F.3d at 973 (internal citations and quotations omitted).

That is doubly-so given that the District has a multitude of accommodations available to it that would enable it to satisfy its contractual commitments to its Clinical Partners *and* to its students without requiring Plaintiffs to forfeit either their religious convictions or their academic programs.

Further, protecting religious liberty is "obviously" in the public interest. *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018). Indeed, the "Constitution and laws have made the protection of religious liberty fundamental." *Apache Stronghold v. United States*, No. 21-15295, 2021 U.S. App. LEXIS 6562, at *20 (9th Cir. Mar. 5, 2021) It follows that the public interest "is not served by maintaining an unconstitutional policy [like the one at issue here] when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020).

## IV. RULE 65(C) BOND REQUIREMENT

The Court has discretion, under Federal Rules of Civil Procedure 65(c), in fixing the amount of security it requires, if any, for issuance of the requested relief. Indeed, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [its] conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal citations omitted); *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Here, there is no realistic likelihood of harm to the District from being wrongfully enjoined, given the immediately-available academic accommodations it can afford Plaintiffs at little to no additional expense to the District (Cmplt. ¶31a-e), while remaining in full compliance with its contractual commitments to Clinical Partners for clinical placements. And, Courts have waived the bond requirement in cases involving the infringement of constitutional rights. *See e.g., Baca v. Moreno Valley Unified School Dist.,* 936 F. Supp. 719, 738 (C.D. Cal. 1996) (waiving the bond requirement because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public

affected by the policy"). Accordingly, Plaintiffs respectfully request that the Court exercise its discretion to either waive bond or set it at a nominal amount.

## V. CONCLUSION

The District has put a price on Plaintiffs' free exercise of their religious beliefs and the cost is their educational future. The District's only skin in the game is its contractual commitments to its Clinical Partners, which can be met in a host of ways that do not require Plaintiffs to forfeit either their religious beliefs or their educational futures. This line in the sand, drawn under the pretext of contractual compliance, has nothing to do with that issue, which is easily solved with any number of accommodations available to the District that could secure that end while still respecting Plaintiffs' sincere religious beliefs.

To prevent this unjustified, irreparable injury the District intends to exact on Plaintiffs on November 8, 2021 in reprisal for exercising their sincere religious beliefs, Plaintiffs request that this Court enter a temporary restraining order and/or preliminary injunction prohibiting the District from enforcing its Vaccine Mandate against Plaintiffs, and requiring the District to, instead, adopt a suitable accommodation for Plaintiffs that will allow them to complete their academic programs on time, and as scheduled and contracted-for by Plaintiffs.

Plaintiffs also respectfully request that the Court waive the bond requirement of Federal Rule of Civil Procedure 65(c), or set it at a nominal amount, because this case involves the infringement of constitutional rights with little or no risk of financial loss to the District.

Respectfully submitted this 21st day of October, 2021

AUER LAW FIRM PLLC

/s/Colleen M. Auer
Colleen M. Auer
*Attorney for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 21st day of October, 2021, a true and correct copy of the foregoing Motion For Temporary Restraining Order And/Or Preliminary Injunction And Memorandum Of Points And Authorities In Support was served via third party process server to the District, as follows:

Elza Macias, in his official capacity as Executive Assistant to the Governing Board
Maricopa Community College District
2411 West 14th Street
Tempe, Arizona 85281

                  /s/ Colleen M. Auer
                  Colleen M Auer
                  *Attorney for Plaintiffs*